UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RUTH SHELLENBERGER, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 04-6599 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural facts, which are undisputed and are summarized in the Joint Stipulation. [See JS 2-3]. Plaintiff protectively filed an application for benefits on June 29, 2001 alleging that she had been disabled since April 1995 due to problems with her left foot, back, and stomach. [JS 2; Administrative Record ("AR") 114, 125]. In a written hearing decision dated July 3, 2003, Administrative Law Judge Joel B. Martinez (the

1  "ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a
2  reduced range of sedentary work, and that she was not disabled because she could perform work
3  available in significant numbers in the national economy. [JS 2; AR 32-33]. The Appeals
4  Council denied plaintiff's request for review of that decision. [AR 4-6].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Whether plaintiff's condition meets or equals a listed impairment**

Plaintiff contends that the ALJ erred in finding that plaintiff's impairments did not meet or equal section 1.02A of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

To "meet" a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal

in severity and duration to all of the criteria for the most similar listed impairment. <u>Tackett</u>, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526); <u>see</u> <u>Sullivan</u>, 493 U.S. at 531.

In order to meet or equal listing 1.02A, a claimant must have

> [m]ajor dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: [¶] A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.00B2b defines an inability to ambulate effectively as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities....
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's

1  home without the use of assistive devices does not, in and of itself, constitute
2  effective ambulation.
3  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

The ALJ found that plaintiff had severe medically-determinable impairments consisting of obesity, asthma, a left heel spur (status post excision on May 16, 2002), plantar fascitis of the left heels and tarsal tunnel syndrome of the left ankle (status post plantar facial release and decompression of the posterior tibial nerve of the left ankle on May 20, 2002), a history of lumbosacral spine strain, and spina bifida occulta at S1. [AR 32]. Plaintiff argues that the ALJ found that plaintiff suffers from a severe impairment impacting her left ankle sufficient to meet or equal the first prong of listing 1.02A, and that he erred in not finding plaintiff disabled under that listing because she cannot ambulate without use of a walker prescribed by her doctor and can not climb stairs. [JS 6-7].

Under listing 1.02A, plaintiff must demonstrate that she suffers a major dysfunction of a joint with involvement of one major peripheral weight-bearing joint, such as the ankle. A diagnosis of a major joint dysfunction is not sufficient, however; she also must show (1) "gross anatomical deformity (e.g., subluxation[1], contracture[2], bony or fibrous ankylosis[3], instability)";

---

[1] Subluxation is "an incomplete luxation or dislocation; though a relationship is altered, contact between joint surfaces remains." Stedman's Medical Dictionary subluxation (27th ed. 2000).

[2] Contracture is defined as "[s]tatic muscle shortening due to tonic spasm or fibrosis, to loss of muscular balance, the antagonists being paralyzed or to a loss of motion of the adjacent joint." Stedman's Medical Dictionary contracture (27th ed. 2000).

[3] Ankylosis refers to "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint," while fibrous ankylosis is "stiffening of a joint due to the presence of fibrous bands between and about the bones forming the joint." Stedman's Medical Dictionary ankylosis (27th ed. 2000). Bony ankylosis, or synostosis, is the "[o]sseous union between two bones that are not supposed to be united; commonly refers to formation of a bony bundle between the radius and ulna

(2) "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)"; and (3) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A.

The ALJ found that plaintiff had severe tarsal tunnel syndrome of the left ankle,[4] and he also found that she was status post decompression of the posterior tibial nerve of the left ankle on May 20, 2002. [AR 25, 32]. The medical expert, Dr. Thomas Maxwell, reviewed the medical evidence concerning plaintiff's ankle impairment, and he testified that none of her impairments met or equaled a listed impairment. [See AR 68-75]. The medical expert's testimony is supported by the examination findings of the Commissioner's consultative internist, who detected full range of motion in plaintiff's left ankle without deformities, and the Commissioner's consultative orthopedist, who noted limited dorsiflexion of the left foot but no other abnormalities of the left ankle joint. [AR 28, 175-180, 294-302]. X-rays taken in June 2000 showed a normal left foot and left ankle. [AR 263]. A preoperative report from May 2002 shows that just prior to her surgery for plantar fascitis and decompression of the posterior tibial nerve of the left ankle, plaintiff was "ambulat[ing] very well" and exhibited full range of motion of the ankle, knee, and hip joints bilaterally. [AR 221-224; see AR 218-220].

The ALJ permissibly based his finding that plaintiff's condition did not satisfy a listing on the medical expert's testimony, which was consistent with other substantial evidence in the record. Thomas, 278 F.3d at 957 ("The opinions of non-treating or non- examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Even assuming that plaintiff's tarsal tunnel syndrome constitutes a major joint

---

following fracture of these two bones." Stedman's Medical Dictionary synostosis (27th ed. 2000).

[4] Tarsal tunnel syndrome is "produced by entrapment neuropathy of terminal branches of posterior tibial nerve (medial plantar, lateral plantar, and calcanial nerves) at the ankle." Stedman's Medical Dictionary syndrome (27th ed. 2000).

dysfunction involving her ankle for purposes of listing 1.02A, plaintiff has not pointed to evidence in the record showing that she had a gross anatomical deformity of the ankle with chronic joint pain and stiffness, abnormal ankle motion, and the required imaging studies showing abnormalities of the ankle joint. In addition, the walker that plaintiff was prescribed in July 2000 was a "CAM [controlled ankle movement] walker," a removable walking cast boot used to limit range of motion of the foot. [AR 25, 271]. A CAM walker is not a "hand-held assistive device" or the equivalent of a "walker, two crutches, or two canes" for purposes of establishing that plaintiff cannot ambulate effectively within the meaning of listings 1.02A and 1.00B2b. Plaintiff was told to discontinue the CAM walker in September 2000, when she was placed in a cast for three weeks. [AR 269-270]. Upon removal of the cast, an ankle brace was dispensed. [AR 269]. She was directed to resume using the CAM walker from January 2001 through March 2001. [AR 265-266]. There is no indication that use of the CAM walker was prescribed by a doctor after that date, nor has plaintiff cited evidence showing that she was prescribed a hand-held walker or other hand-held assistive device. In her May 2002 preoperative report, plaintiff was noted to "ambulate[ ] very well," and there is no mention of her using a CAM walker or hand-held assistive device. [AR 221-224].

For all of the foregoing reasons, the ALJ's finding that plaintiff's impairments did not meet or equal a listing is supported by substantial evidence and free of legal error.

**Hypothetical question**

Plaintiff also contends that the ALJ posed incomplete hypothetical questions to the vocational expert because the ALJ did not include plaintiff's need to use a walker.

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities ...." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett, 180 F.3d at 1101; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). A vocational expert's response to a hypothetical

question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

For the reasons described above, plaintiff has not shown that she was medically prescribed a CAM walker or a hand-held walker to ambulate, other than during the few months in 2000 and again in 2001 when she was directed to use the CAM walker by her treating physician. The ALJ did not err in omitting from his hypothetical questions a limitation involving use of a walker.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.** **IT IS SO ORDERED.**

DATED: February 17, 2006

/s/

ANDREW J. WISTRICH
United States Magistrate Judge